IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

| | |
|---|---|
| CARYN D.M., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:21cv40 |
| ) | |
| KILOLO KIJAKAZI[1], ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

### REPORT AND RECOMMENDATION

Plaintiff Caryn D.M. ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of Defendant Kilolo Kijakazi, the Acting Commissioner of the Social Security Administration ("the Commissioner"), denying Plaintiff's claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act. This action was referred to the undersigned United States Magistrate Judge ("the undersigned") pursuant to 28 U.S.C. § 636(b)(1)(B)–(C), Federal Rule of Civil Procedure 72(b), Eastern District of Virginia Local Civil Rule 72, and the April 2, 2002, Standing Order on Assignment of Certain Matters to United States Magistrate Judges. ECF No. 9.

Presently before the Court are the parties' cross motions for summary judgment, ECF Nos. 13, 16. Plaintiff argues that the ALJ erred in finding that Plaintiff is "not disabled" because the ALJ improperly weighed the opinion of the consultative examiner. *See* ECF No. 14 at 8–15. The

---

[1] On July 9, 2021, Kilolo Kijakazi was appointed as the Acting Commissioner of Social Security, replacing former Commissioner of Social Security Andrew Saul. Accordingly, the Court substitutes Acting Commissioner Kilolo Kijakazi for Andrew Saul in this matter pursuant to Federal Rule of Civil Procedure 25(d).

Commissioner contends that substantial evidence supports her decision and that the ALJ appropriately evaluated the consultative examiner's opinion. ECF No. 17 at 9–14.

After reviewing the briefs, the undersigned makes this recommendation without a hearing pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 7(J). For the following reasons, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment, ECF No. 13, be **DENIED**, the Commissioner's Motion for Summary Judgment, ECF No. 16, be **GRANTED**, the final decision of the Commissioner be **AFFIRMED**, and that this matter be **DISMISSED WITH PREJUDICE**.

## I. PROCEDURAL BACKGROUND

Plaintiff filed applications for DIB and SSI on December 1, 2017, and April 16, 2018, respectively, due to heart disease, angina, vascular disease, diabetes, neuropathy, anxiety/depression, and high cholesterol. R. at 129, 237, 239.[2] Plaintiff's DIB application was initially denied on March 7, 2018, and both applications were denied upon reconsideration on June 8, 2018. R. at 171, 173, 189. On July 31, 2018, Plaintiff requested a hearing before an administrative law judge. R. at 197.

A hearing was held on August 19, 2019, at which Plaintiff appeared with counsel before Administrative Law Judge William Pflugrath ("the ALJ"). R. at 43–104. Both Plaintiff and an impartial vocational expert testified at the hearing. R. at 51–104. On August 30, 2019, the ALJ issued a decision finding Plaintiff not disabled. R. at 21–37. Plaintiff filed a request with the Appeals Council to reconsider the ALJ's decision, which was denied on July 7, 2020, making the ALJ's decision the final decision of the Commissioner. R. at 10–12.

---

[2] "R." refers to the certified administrative record that was filed under seal on May 28, 2021. ECF No. XX, pursuant to Local Civil Rules 5(B) and 7(C)(1).

Having exhausted her administrative remedies, on April 19, 2021, Plaintiff filed a Complaint for judicial review of the Commissioner's decision. ECF No. 1. On October 22, 2021, Plaintiff filed a motion for summary judgment and accompanying memorandum in support. ECF Nos. 13–14. On November 22, 2021, the Commissioner filed a motion for summary judgment and brief in support. ECF Nos. 16–17. Plaintiff filed a reply on December 13, 2021. ECF No. 18. Because the motions are fully briefed, the matter is now ripe for recommended disposition.

## II. RELEVANT FACTUAL BACKGROUND

The Record included the following factual background for the ALJ to review:

Plaintiff was fifty-four years old at the time of her alleged disability onset date of November 7, 2017. R. at 237. Plaintiff graduated high school and previously worked as an office bookkeeper and a field service counselor for a cemetery. R. at 53–54.

### A. Plaintiff's Medical Records Relevant to Alleged Mental Impairments[3]

With respect to Plaintiff's anxiety and depression, Plaintiff treated with her primary care physician, Dr. Sarah Younger. *See e.g.*, R. at 644–794. Plaintiff's records noted that the onset date of her depressive disorder was November 17, 2014. *See* R. at 644.

On May 18, 2016, Dr. Younger noted that Plaintiff's depression systems had improved in response to Wellbutrin. R. at 685–86. Plaintiff reported that she did not have difficulty functioning, anxious or fearful thoughts, depressed mood, difficulty concentrating, or fatigue. R. at 685–86.

Plaintiff did not receive additional treatment for her anxiety and depression until November 29, 2017. R. at 643. At that visit with Dr. Younger, Plaintiff reported that her symptoms were

---

[3] The majority of Plaintiff's medical records stem from her cardiac impairments. *See e.g.*, R. at 30–35. However, because Plaintiff's physical impairments are not at issue, the Court does not address Plaintiff's medical records relating to her physical impairments.

3

worsening, and she found it somewhat difficult to function. R. at 644. Dr. Younger noted that Plaintiff presented with depressed mood, demised interest or pleasure, excessive worry, and fatigue. R. at 644. Dr. Younger noted that Plaintiff was irritable, and her depression was aggravated by conflict or stress. R. at 644. Dr. Younger noted that although Wellbutrin had worked well for years, Plaintiff's stress has increased over the previous few months and it was no longer working well. R. at 644. Dr. Younger prescribed Citalopram. R. at 643.

In September 2018, Dr. Younger noted that Plaintiff was responding well to the combination of Wellbutrin and Citalopram. R. at 793–94. Plaintiff reported functioning was not difficult, and she denied experiencing a depressed mood, diminished interest or please, excessive worry, fatigue, or irritability. R. at 794. Plaintiff was experiencing difficulty with sleep, and Dr. Younger prescribed Klonopin. R. at 794.

In January 2019, Plaintiff reported that she did have some improvement in symptoms, but she was experiencing a depressed mood, anxious and fearful thoughts, and excessive worry. R. at 787. Dr. Younger again noted that Plaintiff's depression was aggravated by conflict and stress. R. at 787. At Plaintiff's request, Dr. Younger referred her to see a psychologist. R. at 786.

Upon Plaintiff's physical examinations with Dr. Younger, she was consistently oriented to time, person, place, and situation, and demonstrated normal mood and affect. *See e.g.*, R. at 661, 670, 675, 689, 798, 805. Dr. Younger also consistently documented that Plaintiff had normal memory, and Plaintiff never reported concerns with her memory to Dr. Younger. *See e.g.*, R. at 653, 661, 670 675, 689, 790, 805, 1017, 798, 805. Upon physical examinations with other providers, Plaintiff's mood, affect, and memory were noted as normal. *See e.g.*, R. at 398, 603, 607, 611, 615, 631, 774, 916, 919, 921, 936, 939.

Plaintiff reported that she began to see a mental health specialist in July 2019. R. at 50–51, 81. However, a records request sent to Hampton Mental Health Associates, Inc. in August 2019 reported no records of Plaintiff. R. at 1005–06.

### B. Relevant Mental Evaluations Completed by State Agency Examiners

State psychological consultative examiner Brenna Squires,, Psy.D., evaluated Plaintiff on February 21, 2018. At the consultative examination, Plaintiff "reported to feel 'depressed' and 'mad' because she 'lost everything.'" R. at 768. Plaintiff also reported memory loss and feeling forgetful. R. at 769. She stated that she had consistently been feeling depressed and low, and that she cried often. R. at 769. Plaintiff stated that she feels "high strung" and took Klonopin for her anxiety. R. at 769. As for her daily activities, Plaintiff reported that she "gets up and has a couple cups of coffee, does her devotions, talks to girlfriends, does things around the house, washes dishes, works on the computer, runs a few errands, picks up her granddaughter" as well as "shar[ing] the cleaning responsibilities with her husband" and grocery shopping. R. at 769. Despite this, Plaintiff stated that she feels that she had less energy than she used to, and has "some days where she has very low motivation and low energy." R. at 769. Plaintiff reported that she has not looked for work after she worked at the cemetery because she has low self-confidence, low energy, and memory issues. R. at 769.

Upon a mental status examination, Dr. Squires notes that Plaintiff was alert, oriented, cooperative, and friendly. R. at 770. Plaintiff had an adequate memory and put good effort on all tasks throughout the evaluation. R. at 770. However, Plaintiff was "tearful throughout the evaluation, especially when discussing her heart condition and decline in functioning." R. at 770.

Dr. Squires diagnosed Plaintiff with "Major Depressive Disorder, recurrent episode, moderate" and "Other Specified Anxiety Disorder, generalized anxiety with insufficient

symptoms." R. at 770. Dr. Squires recommended Plaintiff participate in individual therapy and continue to take her medication to alleviate her symptoms. R. at 770.

In terms of a functional assessment, Dr. Squires stated that:

> [t]he claimant would not be expected to complete detailed and complex tasks on her own. She would be expected to perform many simple or repetitive tasks; however, noted to have low self-confidence, low energy, and memory issues which make it difficult to complete tasks. The claimant's ability to perform work activities on a regular basis is judged to be fair, as long as they are simple and she has sufficient time to complete them. The claimant's ability to attend may be negatively impacted due to low motivation and low energy. She may be able to work a simple job if it required minimal energy and allowed her to complete the task with sufficient time. The claimant would not likely require monitoring or additional supervision. At the present time, psychiatric symptoms would likely interrupt a normal workday or workweek. She was tearful throughout this evaluation, and she was easily distressed when discussing her weaknesses and medical issues. . . . She is not likely to have difficulty or issues interacting with co-workers or the public. The claimant does not seem capable of handling typical stressors in the workplace at this time.

R. at 770–71.

At the initial and reconsideration levels, Drs. Howard Leizer, Ph.D., and Joseph Leizer, Ph.D., both determined that Plaintiff had no more than mild mental limitations and accordingly, no mental limitations were warranted. R. at 135, 152–53, 165–66.

### C. Plaintiff's Testimony at ALJ Hearing

At the ALJ hearing, Plaintiff testified about her previous work experience as a field service counselor for a cemetery, and as a bookkeeper/office manager. R. at 54–60. She testified that she regularly does housework, laundry, cooking, as well as watches her grandchildren, cooks, and picks up groceries. R. at 81. Plaintiff reported beginning to see a mental health specialist in July 2019. R. at 81.

## III. THE ALJ'S DECISION

To determine if the claimant is eligible for benefits, the ALJ conducts a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015) (summarizing the five-step sequential evaluation). At step one, the ALJ considers whether the claimant has worked since the alleged onset date, and if so, whether that work constitutes substantial gainful activity. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the ALJ considers whether the claimant has a severe physical or mental impairment that meets the duration requirement. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). At step three, the ALJ determines whether the claimant has an impairment that meets or equals the severity of a listed impairment set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant does not have an impairment that meets or equals the severity of a listed impairment, the ALJ will determine the claimant's residual functional capacity, that is, the most the claimant can do despite her impairments. §§ 404.1545(a), 416.945(a). At step four, the ALJ considers whether the claimant can still perform past relevant work given her residual functional capacity. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Finally, at step five, the ALJ considers whether the claimant can perform other work. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

The ALJ will determine the claimant is not disabled if: they have engaged in substantial gainful activity at step one; they do not have any severe impairments at step two; or if the claimant can perform past relevant work at step four. *See Jackson v. Colvin*, No. 2:13cv357, 2014 WL 2859149, at *10 (E.D. Va. June 23, 2014). The ALJ will determine the claimant is disabled if the claimant's impairment meets the severity of a listed impairment at step three, or if the claimant cannot perform other work at step five. *Id.*; *see also Mascio*, 780 F.3d at 634–35 (noting the ALJ

will only determine the claimant's residual functional capacity if the first three steps do not determine disability).

Under this sequential analysis, the ALJ made the following findings of fact and conclusions of law:

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of November 7, 2017. R. at 26. At step two, the ALJ found that Plaintiff had the following severe impairments: status-post myocardial infarction, heart disease, hypertension, diabetes mellitus, arterial disease, cervical degenerative disc disease, and obesity. R. at 26. The ALJ found Plaintiff's anxiety and depression do not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities, and accordingly, that those impairments were nonsevere. R. at 27. At step three, the ALJ considered Plaintiff's severe impairments and found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. R. at 28–30.

After step three, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work, with the following limitations:

> the claimant can only occasionally climb stairs, balance, stoop, kneel, crouch, and crawl. She can never climb ladders. The claimant can have no more than frequent exposure to dust, fumes, or pulmonary irritants, or vibrations. She is limited to only nonproduction paced tasks as to tempo and capacity, i.e., the kind of pace associated with assembly-line work due to her cardiac impairments. The claimant must be allowed to occasionally alternate between sitting and standing positions while at the workstation.

R. at 30.

In making this determination, the ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and

other evidence, based on the requirements of 20 C.F.R. § 404.1529 and SSR 16-3p." R. at 30.

At step four, the ALJ determined that Plaintiff was capable of performing her past relevant work as a bookkeeper and office manager, which is considered sedentary work. Despite finding that Plaintiff could perform her past relevant work and was not disabled at step four, the ALJ went on to step five and concluded Plaintiff could perform other jobs that exist in significant numbers in the national economy. R. at 35. Relying on the vocational expert's testimony, the ALJ found that Plaintiff could perform the representative occupations of expediter/service order worker, general clerk, data examination clerk, and payroll clerk. R. at 36. Thus, the ALJ determined that Plaintiff was not disabled from the alleged onset date through the date of his decision, August 30, 2019. R. at 36–37.

## IV. STANDARD OF REVIEW

Under the Social Security Act, the Court's review of the Commissioner's final decision is limited to determining whether the decision was supported by substantial evidence in the record and whether the correct legal standard was applied in evaluating the evidence. *See* 42 U.S.C. § 405(g); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "evidence as a reasonable mind might accept as adequate to support a conclusion." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Britt v. Saul*, No. 19-2177, 2021 WL 2181704, at *2 (4th Cir. May 28, 2021) (quoting *Craig*, 76 F.3d at 589). The Court looks for an "accurate and logical bridge" between the evidence and the ALJ's conclusions. *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018); *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016); *Mascio v. Colvin*, 780 F.3d 632, 637 (4th Cir. 2015).

In determining whether the Commissioner's decision is supported by substantial evidence, the Court does not "re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [Commissioner]." *Craig*, 76 F.3d at 589. If "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for the decision falls on the [Commissioner] (or the [Commissioner's] delegate, the ALJ)." *Id.* (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). Accordingly, if the Commissioner's denial of benefits is supported by substantial evidence and applies the correct legal standard, the Court must affirm the Commissioner's final decision. *Hays*, 907 F.2d at 1456.

## V. ANALYSIS

Plaintiff's appeal to this Court raises a single challenge to the ALJ's decision: that the ALJ erred by failing to properly weigh the opinion of consultative examiner Dr. Squires. ECF No. 14 at 10–14. Specifically, Plaintiff takes issue with the ALJ's failure to include any RFC limitations to account for Plaintiff's mental impairments in light of Dr. Squires' opinion finding significant limitations. *Id.* In response, the Commissioner argues that the ALJ properly evaluated the supportability and consistency of Dr. Squires' opinion in accordance with the proper regulations, and that the ALJ's evaluation of Dr. Squires' opinion was supported by substantial evidence. ECF No. 17 at 10–14.

Under the SSA regulations[4], the ALJ must consider each medical opinion in the record and articulate how persuasive they find the medical opinion based on the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors that tend to support or contradict the opinion. §§ 404.1520c(b), (c)(1)–(5), 416.920c(b),

---

[4] Because this matter involves a claim filed after March 27, 2017, the revised regulations regarding the evaluation of medical opinions set forth in Section 404.1520c apply in this case. Under the new regulations, ALJs no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion." §§ 404.1520c(a); 416.920c(a).

10

(c)(1)–(5). Supportability and consistency are "the most important factors" in determining the persuasiveness of a medical opinion, and accordingly, the ALJ must explain how he or she considered those factors in the written decision. §§ 404.1520c(b)(2), 416.920c(b)(2). With respect to supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are," the "more persuasive the medical opinion[]" will be. §§ 404.1520c(c)(1), 416.920c(c)(1). As for consistency, "[t]he more consistent a medical opinion[]" is with "evidence from other medical sources and nonmedical sources," the "more persuasive the medical opinion[]" will be. §§ 404.1520c(c)(2), 416.920c(c)(2). The ALJ may explain how they considered the other factors, including the medical source's relationship with the claimant, but are only required to do so when contradictory medical opinions regarding the same issue are equally supported by and consistent with the record. §§ 404.1520c(b)(2)–(3), 416.920c(b)(2)–(3). If medical opinions regarding the same issue are equally supported by and consistent with the record, the ALJ must articulate the other factors and consider their impact on the persuasiveness of the medical opinions. §§ 404.1520c(b)(3), 416.920c(b)(3).

Here, the ALJ applied the correct legal standard by analyzing the supportability and consistency factors in weighing Dr. Squires' opinion. R. at 28. The ALJ explained that Dr. Squires' opinion was unpersuasive because it was

> inconsistent with the medical records as well as Dr. Squires' own examination of the claimant. The claimant was alert and oriented in her examinations. She had an intact memory and thought processes. The claimant was able to spend time with family and friends and go grocery shopping. She did not have any emergency room visits for her mental impairments.

R. at 28.

The ALJ evaluated the supportability factor by explaining that Dr. Squires opinion was not supported by her own examination, at which Plaintiff demonstrated that she was alert, and oriented,

with intact memory and thought processes, and because Dr. Squires' only examined Plaintiff once. R. at 28. The ALJ also noted that Dr. Squires' opinion was inconsistent with Plaintiff's medical records. R. at 28. Dr. Squires opined that Plaintiff could have difficulty attending to tasks due to low self-esteem, that her symptoms would likely interrupt a workweek, and that she was not capable of handling work stress. R. at 28 (citing R. at 767–71). However, the ALJ noted that Plaintiff's psychiatric symptoms did not require hospitalization, and she was able to partake in activities such as spending time with family and friends, and grocery shopping. R. at 28. Accordingly, the ALJ stated why Dr. Squires' opinion was not well-supported, and was inconsistent with other evidence in the record.[5]

Although the ALJ did not contemporaneously provide a detailed explanation about how the record was inconsistent with Dr. Squires' opinion, reading the ALJ's decision as a whole, the ALJ clearly and sufficiently pointed out inconsistencies between Dr. Squires' opinion and the record. *See Britt v. Saul*, 860 F. App'x 256, 262 (4th Cir. 2021) ("We can conduct a meaningful review without making an administrative law judge repeat himself."). For example, the ALJ explained why Plaintiff's anxiety and depression were nonsevere and caused no more than minimal limitation in her ability to perform basic mental work activities. R. at 27. Although Dr. Squires opined that Plaintiff has "memory issues, which make it difficult to complete tasks," at step two, the ALJ noted that Plaintiff only had a mild limitation in understanding, remembering, or applying information. R. at 27, 770. The ALJ explained that although Plaintiff alleged experiencing memory deficits, Plaintiff consistently demonstrated intact memory, and normal orientation,

---

[5] Although Plaintiff takes issue with the fact that the ALJ used the one-time nature of a consultative examination as a reason to find Dr. Squires' opinion unpersuasive (*see* ECF No. 14 at 11), the Fourth Circuit has acknowledged that it may be appropriate for an ALJ to provide "more weight" to a treating source who has provided ongoing treatment, as that source has a better "ability to provide 'a detailed, longitudinal picture' of a claimant's alleged disability" compared to "non-treating sources, such as [a] consultative examiner[]." *Britt v. Saul*, 860 F. App'x 256, 260 (4th Cir. 2021) (citing §§ 404.404.1527(c), 416.927(c)).

speech, and thought processes. R. at 27. Similarly, although Dr. Squires opined that Plaintiff's low self-confidence and low energy would make it difficult to complete tasks, the ALJ stated at step two that Plaintiff only has a mild limitation in her ability to maintain concentration, persistence, and pace. R. at 27, 770–71. The ALJ explained that upon examination, Plaintiff demonstrated intact concentration and attention, was oriented, and could complete household chores, drive a car, and care for her granddaughters. R. at 27. Finally, although Dr. Squires opined that Plaintiff's psychiatric symptoms would interrupt a workweek, that her ability to attend would be impacted by her low motivation, and that she does not seem capable of handling typical stressors in the workplace, the ALJ noted that Plaintiff has no limitation in her ability to adapt or manage herself.[6] R. at 27, 771. The ALJ explained that Plaintiff was adequately dressed and groomed in her examinations, and that she was able to go grocery shopping, run errands, use a computer, and care for her granddaughters. R. at 27. Overall, the ALJ found Plaintiff's mental limitations to be nonsevere because they do not cause more than minimal limitation in her ability to perform basic mental work activities. R. at 27.

Additionally, in discussing the state agency psychologists' opinions about Plaintiff's mental impairments, the ALJ explained that Plaintiff's mental health symptoms were managed with medication, her examinations showed she was oriented, and had intact memory and attention, and that she displayed normal behavior. R. at 28. The ALJ further noted that Plaintiff did not

---

[6] Plaintiff also contends that SSR 85-15 required the ALJ to consider that Plaintiff could not tolerate the normal stress of work, as opined by Dr. Squires, and reflected in Dr. Younger's notes. *See* ECF No. 14 at 14; ECF No. 18 at 2–3; R. at 771, 787. SSR 85-15 provides that "[a]ny impairment-related limitations created by an individual's response to demands of work, however, must be reflected in the RFC assessment." SSR 85-15, 1985 WL56857, at *6 (Jan. 1, 1985). However, as explained above, the ALJ specifically found Dr. Squires' assessment unpersuasive, and found that Plaintiff had *no* limitation in her ability to adapt and manage herself. R. at 27–28. Moreover, although Dr. Younger noted that Plaintiff's depression was aggravated by conflict or stress," she also found that Plaintiff's symptoms responded fairly to medication. R. at 787. Thus, the ALJ did not fail to consider Plaintiff's reactions to stress; rather, the ALJ determined Plaintiff did not have any impairment-related limitations due to her reactions to stress.

require emergency room treatment for her mental impairments, and more importantly, that she did not seek consistent counseling or treatment from a mental health specialist for her anxiety and depression. R. at 28.

Moreover, an ALJ is not specifically required to discuss any nonsevere impairments in the RFC analysis, so long as the ALJ demonstrates that he or she *considered* such impairments. *Britt*, 860 F. App'x at 262 (emphasis added) ("The discussion in step-two that these limitations had a minimal impact on vocation and were being managed tells us what impact these limitations had in the [RFC] analysis."). Here, it is clear that the ALJ considered Plaintiff's nonsevere impairments. R. at 49 ("I will include non-severe impairments as well as part of my consideration."). The ALJ's explanation of Plaintiff's nonsevere mental impairments sufficiently "buil[t] an accurate and logical bridge from the evidence to his conclusion" that Plaintiff's RFC did not require any mental limitations. *Monroe*, 826 F.3d at 189. Because the ALJ sufficiently discussed Plaintiff's mental limitations, and how Dr. Squires' opinion was neither well-supported by nor consistent with other evidence in the record, the ALJ did not err.

## VI. RECOMMENDATION

Because substantial evidence supports the Commissioner's decision and the correct legal standard was applied, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment, ECF No. 13, be **DENIED**, the Commissioner's Motion for Summary Judgment, ECF No. 16, be **GRANTED**, the final decision of the Commissioner be **AFFIRMED**, and that this matter be **DISMISSED WITH PREJUDICE**.

## VII. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of the Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is forwarded to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to the counsel of record for Plaintiff and the Commissioner.

Lawrence R. Leonard
United States Magistrate Judge

Newport News, Virginia
June 8, 2022